■ In the Matter of ALICIA C., on Behalf of ZAMIAN C., Appellant, v EVARISTO G. et al., Respondents. — In a paternity proceeding pursuant to article 5 of the Family Court Act, petitioner appeals, as limited by her brief, from so much of an order of the Family Court, Queens County (Fogarty, J.), dated September 1, 1982, as dismissed the petition against Evaristo G. Order reversed insofar as appealed from, on the law and the facts, without costs or disbursements, and Evaristo G. is declared to be the father of the infant, Zamian C. This proceeding was commenced by the maternal grandmother of an infant named Zamian C., on his behalf, to determine which of two men is the father of the child. The natural mother had died prior to the commencement of the proceeding. At the hearing on the petition, Evaristo G. claimed paternity. He testified that he cohabited and had sexual relations with the mother continuously from the period prior to the infant's conception until

approximately one year after the infant's birth on August 12, 1978. His testimony was corroborated by the testimony of his sisters, the maternal grandmother, and a maternal aunt. During the period prior to conception, Evaristo G. and the mother shared a bedroom in the maternal grandmother's apartment. The maternal grandmother, and the maternal aunt who was also living in that apartment, both testified that the mother did not see other men during that period. In August, 1978, the mother signed a form for the child entitled "New York Hospital-Out-Patient Registration Record" which listed Evaristo G. as the father. After Evaristo G. and the mother separated in August, 1979, she was befriended by Henry P., whose name was, thereafter, listed on the child's birth certificate as the father. Henry P. was made a corespondent in this proceeding, but results of a blood-grouping test excluded him from paternity. At the hearing, Dr. Leon Sussman testified that results of the human leucocyte antigen blood test indicated that there was a 98.5% probability that Evaristo G. was the father of the child. In reaching that determination, Dr. Sussman concluded, based upon Evaristo G.'s appearance, that Evaristo G. was of the Caucasian race. The Family Court excluded the results of the test, on ·the ground that "a test based upon an arbitrary, subjective determination of race by the examiner cannot be the basis for a scientific procedure which is to be recognized". The Family Court concluded that the remainder of the evidence was insufficient, because Evaristo G. was unable to pinpoint the exact dates when he had sexual intercourse with the mother. We reverse. With respect to the admissibility of the results of the human leucocyte antigen blood test, the Legislature has determined that the results of that test are sufficiently reliable to "be received in evidence to aid in the determination of whether the alleged father is or is not the father" (see Family Ct Act, § 532, subd [a]). The Family Court's observation that racial appearances are an arbitrary criterion goes to the weight, but not the admissibility of that evidence (see *Matott v Ward*, 48 NY2d 455, 462). That evidence, taken in conjunction with the other uncontroverted testimony elicited at the hearing that Evaristo G. cohabited continuously with the mother during the period to conception, during the pregnancy, and after the birth, and that the mother did not see other men during that period, constituted clear and convincing evidence that he is, in fact, the father of the child (see *Raysor v Gabbey*, 57 AD2d 437; *People ex rel. Blake v Charger,* 76 Misc 2d 577; cf. *Matter of Commissioner of Social Servs.* [*Patricia A.*] *v Philip De G.*, 88 AD2d 911). Accordingly, the order appealed from is reversed insofar as appealed from and Evaristo G. is declared to be the father of the infant, Zamian C. Mollen, P. J., Damiani, Lazer and Mangano, JJ., concur.