[No. 14479–1–I. Division One. July 30, 1986.]

THE STATE OF WASHINGTON, ET AL, *Respondents*, v. DAVID JAMES HOWE, *Appellant*.

560

*Robert H. Stevenson,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Francis De-Villa, Deputy,* for respondents.

SCHUMACHER, J.*—This appeal arises out of a contested paternity action brought by the State of Washington pursuant to the Uniform Parentage Act (RCW 26.26). The case was referred to the King County Prosecuting Attorney's Office by the Department of Social and Health Services. The trial court determined that appellant David James Howe is the natural father of Michael Paul McGuire. We affirm.

The petition which commenced the present action was served on appellant in May 1982. The petition sought to establish paternity and to obtain child support and reimbursement. Appellant David James Howe answered the petition and denied that he was the father of the child.

On August 17, 1982, a hearing was held before a court commissioner to consider the State's motion to compel appellant's submission to a blood test and to consider appellant's motion resisting administration of the blood test and requesting the setting of a hearing on oral testimony. After considering the affidavits presented and arguments of counsel, the commissioner found "good cause" to order the blood test, and thereafter entered an order requiring appellant to submit to a blood test. The order denied the request for a hearing on oral testimony.

Appellant subsequently brought a motion for reconsideration of the commissioner's ruling in superior court. The motion was denied by the Superior Court on December 23, 1982.

The case came on for bench trial on January 19, 1984. Appellant then moved to limit testimony regarding the results of blood tests performed in the case. After hearing the evidence presented by the State and by respondent, the trial court denied respondent's motion to limit testimony

---

*This appeal was heard by a Supreme Court Justice and two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division One.

regarding blood tests.

On February 28, 1984, the trial court entered findings of fact and conclusions of law and an order and judgment of paternity naming David James Howe as the natural father of the child. This appeal followed.

Appellant first contends the trial court erred in denying him a full evidentiary hearing prior to ordering him to submit to a blood test. He argues that when intercourse is denied by the putative father, the trial court must hold a full evidentiary hearing, including oral testimony and cross examination, to determine whether the State has made a "prima facie" case of intercourse. According to appellant, the failure to afford such a hearing is a violation of due process under both the federal and state constitutions.

In support of his argument, appellant relies primarily on dicta in *State v. Meacham,* 93 Wn.2d 735, 612 P.2d 795 (1980). In that case, the Supreme Court considered whether the blood tests ordered pursuant to RCW 26.26, the state's Uniform Parentage Act, violated the appellants' privacy rights or submitted them to an unreasonable search and seizure under the Fourth Amendment. *Meacham,* at 738–39. In rejecting these arguments, the court stressed that the "orders requiring submission for blood withdrawal in these cases were not entered *until after full adversary hearings."* (Italics ours.) *Meacham,* at 739. However, in the last paragraph of the opinion, the court added that

> Neither of these appellants has denied having sexual intercourse with the particular mother concerned at about the time conception is alleged to have occurred. Had such a denial been made, it would have been incumbent upon the court to *hold a hearing* to determine that issue prior to ordering submission to a blood test. The trial court should be satisfied, *at least prima facie,* of the fact of sexual intercourse during the appropriate time period as a condition to requiring submission to a blood test. *That is, however, not an issue in controversy in these cases.*

(Italics ours.) *Meacham,* at 741.

Appellant asks this court to follow the suggestions in

*Meacham* that when intercourse is denied, a trial court (1) must hold a *full evidentiary hearing* (with oral testimony and cross examination), and (2) must be satisfied, *"at least prima facie,* of the fact of sexual intercourse during the appropriate time period [prior to ordering] submission to a blood test." (Italics ours.) *Meacham,* at 741.

## BLOOD TEST STANDARD

With respect to the "prima facie" showing, our state Legislature recently added[1] the following language to the blood test section of the Uniform Parentage Act:

If an alleged father objects to a proposed order requiring him to submit to paternity blood tests, the court may require the party making the allegation of possible paternity to provide sworn testimony, by affidavit or otherwise, stating the facts upon which the allegation is based. The court shall order blood tests if it appears that a *reasonable possibility exists* that the requisite sexual contact occurred.

(Italics ours.) RCW 26.26.100. This new language establishes a "reasonable possibility" (of sexual intercourse) standard for ordering blood tests. Whether this "reasonable possibility" is equivalent to either the "prima facie" showing suggested in *Meacham,* or the "good cause" required under CR 35(a)[2] is not known. However, since the "prima

---

[1]The new section was added subsequent to *State v. Meacham,* 93 Wn.2d 735, 612 P.2d 795 (1980), and the blood test hearing in this case.

[2]Under CR 35(a), a trial court may order a blood test if "good cause" is shown. *See* 8 C. Wright & A. Miller, *Federal Practice* § 2234 (1970); *Balfour v. Balfour,* 413 So. 2d 1167 (Ala. Civ. App. 1982). In *Schlagenhauf v. Holder,* 379 U.S. 104, 118–19, 13 L. Ed. 2d 152, 85 S. Ct. 234 (1964), the United States Supreme Court stated:

Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements, as the Court of Appeals in this case itself recognized, are necessarily related. This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in

facie" language in *Meacham* is clearly dicta, and since we hold that the court properly ordered the blood tests, we need not decide whether the "prima facie" showing suggested in that case is equivalent to the "reasonable possibility" standard now mandated by the statute or the "good cause" required under the rules of civil procedure. For our purposes, it will suffice to say that the trial court here found "good cause" to order the blood test on the basis of the mother's and alleged father's affidavits. In our opinion, the affidavits not only established "good cause," but also established a "reasonable possibility" or a "prima facie" case of the requisite sexual intercourse.

### FULL EVIDENTIARY HEARING/DUE PROCESS

Appellant cites *Meacham* and the Fourth and Fourteenth Amendments for the proposition that a full evidentiary hearing is required under due process principles before a court may compel a putative father to submit to a blood test.[3] Again, dicta in *Meacham* suggests that when the putative father denies sexual intercourse with the mother, it is incumbent on the court "to *hold a hearing* to determine that issue prior to ordering submission to a blood test." (Italics ours.) *Meacham,* at 741. However, the above quoted language in *Meacham* does not indicate what type of "hearing"[4] is required in these circumstances. Appellant submits that the hearing envisioned by *Meacham* and required under due process principles is one that

---

other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

[3]Appellant also relies on *Rose v. District Court of Eighth Judicial Dist.,* ___ Mont. ___, 628 P.2d 662 (1981). Though some language in *Rose* arguably supports appellant's position, the case is clearly distinguishable because it is based on a statute which has no counterpart in this state.

[4]The trial court in the instant case did hold a "hearing" on the motion to compel the blood test, but denied a request for a full evidentiary hearing with oral testimony and cross examination.

is "appropriate and meaningful" in the particular circumstances. He urges that a hearing in the circumstances presented here must include cross examination, oral testimony, and confrontation of witnesses. We disagree.

■ As a general rule, due process "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). However, there is no inherent right to offer oral evidence in support of a litigant's defense, 16A Am. Jur. 2d *Constitutional Law* § 848 (1979); nor is there an inherent right to confront or cross–examine witnesses in every type of proceeding. 16A Am. Jur. 2d § 849; *see Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 610, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974). The type of hearing required depends on consideration of three factors: (1) the private interest that will be affected by the official action; (2) the governmental interest in the matter; and (3) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards. *Mathews v. Eldridge,* 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893, 903 (1976).

■ With respect to the first factor listed above, the private interest of appellant affected by the order compelling a blood test was his right to privacy. *See State v. Meacham,* 93 Wn.2d 735, 737–38, 612 P.2d 795 (1980). As the *Meacham* court noted at page 738:

> The right to privacy, to be let alone, while fundamental and personal in nature, is not absolute. The State may reasonably regulate this right to safeguard society or where it otherwise has a compelling interest.
>
> Here, the State has a compelling interest in fixing the parentage of a minor child. The test specified to be used is highly reliable. No other evidence that is at all comparable in effectiveness is available to the State. The pain inflicted when blood is withdrawn by an experienced technician is inconsequential. And, any hazard to health is virtually nonexistent.

(Citation omitted.) Thus, under *Meacham,* appellant's right to privacy is subject to reasonable regulation where the

State shows a compelling interest.[5]

The second factor is the State's interest in the function involved. Again, the *Meacham* court directly addressed this point, stating that "the State's interest in accurately determining the parentage of the children concerned is *compelling*." (Italics ours.) *Meacham,* at 737–38. Furthermore, in *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977), the court held that:

> The State has a compelling interest in assuring that the primary obligation . . . falls on *both* natural parents rather than on the taxpayers of this state. Further, this court's greatest concern is the welfare of the child and the protection of the child's fundamental right to support.

*Wood,* at 102. Thus, it is quite clear that the State's interest in paternity actions is compelling.[6]

This brings us to the final factor mentioned in *Mathews v. Eldridge, supra, i.e.,* the risk of an erroneous deprivation of the privacy interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. In the instant case, the procedure used was a hearing on a motion to compel blood tests. As previously mentioned, the hearing in this case was not a "full" evidentiary hearing with oral testimony and cross examination. Rather, the hearing involved submission of affidavits and argument of counsel. Though, as respondent points out, this procedure may from time to time result in an intrusion on the privacy rights of a falsely accused man, if the man is in fact falsely accused, the blood tests will usually exclude him and result in his dismissal from the case. Furthermore, since the trial court is, at this stage of the paternity proceedings, concerned only with the

---

[5]The *Meacham* court also stated that the "intrusion by the State [in administering the blood tests] is minimal . . ." *Meacham,* at 737.

[6]*See also State v. James,* 38 Wn. App. 264, 271, 686 P.2d 1097 (1984) ("State also has a legitimate financial interest in conducting paternity proceedings as economically as possible.").

*probability* or *possibility* of the requisite sexual intercourse, there is little value[7] in a procedure which is designed to determine the *fact* of sexual intercourse. The question of whether sexual intercourse *in fact* occurred is adjudicated at trial, not at a pretrial hearing. Therefore, a weighing of the *Mathews* factors leads to the conclusion that the procedures used in this case were constitutionally sufficient, and the trial court did not err in denying the request for a full hearing.

## BLOOD TEST EVIDENCE

Appellant next contends the trial court erred in admitting blood test evidence. Because we hold that the evidence, exclusive of the *inclusionary* blood test evidence, was sufficient to support a finding of paternity, we need not decide whether the *inclusionary* blood test evidence was erroneously admitted.

With respect to the *exclusionary* blood test evidence,[8] appellant contends the trial court erred in admitting such evidence because his alleged racial characteristics and the alleged racial characteristics of the mother were not considered in determining whether he could be excluded as the father. He contends the failure to consider the alleged racial characteristics renders the exclusionary blood test evidence inaccurate. We disagree.

█ Though racial characteristics are relevant in determining the probability of paternity, the relevant decisions and authorities discussing exclusionary blood tests indicate that racial characteristics have no bearing on the nonstatistical question of whether an alleged father can or cannot be

---

[7]We agree with respondent's observation that adoption of such a procedure could have several detrimental effects. First, it could actually result in more rightly accused fathers avoiding their obligations. Second, the procedure could often deprive the court of the best available evidence on the issue of paternity. *See State v. Meacham*, 93 Wn.2d 735, 738, 612 P.2d 795 (1980) ("[n]o other evidence that is at all comparable in effectiveness is available to the State.").

[8]The blood tests which failed to exclude appellant were ABO, MNS, Rh, Kell, Duffy, Kidd, and HLA.

excluded on the basis of test results.[9] *Alicia C. v. Evaristo G.,* 115 Misc. 2d 564, 566, 454 N.Y.S.2d 395, 396 (N.Y. Fam. Ct. 1982), *rev'd on other grounds,* 93 A.D.2d 820, 460 N.Y.S.2d 616 (1983). *See generally* 1 S. Shatkin, *Disputed Paternity Proceedings,* ch. 8 (4th ed. 1984). Thus, given the objections raised,[10] the trial court did not err in admitting the exclusionary blood test evidence.

### BURDEN OF PROOF

■ Before reviewing the admissible evidence and the sufficiency thereof, we must determine what degree of proof is required in order to establish paternity. Appellant contends the appropriate burden is clear and convincing evidence. On the other hand, respondent contends the burden is the same as in most other civil actions, *i.e.,* a preponderance of the evidence. Though Washington appellate courts have not previously addressed this question, RCW 26.26-

---

[9]Through the administration of various blood tests, an expert can determine either that the alleged father is not the father, or that he *could be* the father, *i.e.,* could not be excluded. In general, the greater the number of tests used, the more significant a nonexclusion becomes. In other words, the probability that the putative father is the true father is enhanced as added procedures fail to provide an exclusion. *See generally Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 Fam. L.Q. 247, 260–61 (1976); M. Beautyman, *Paternity Actions—A Matter of Opinion or a Trial of the Blood?,* J. Legal Med. 17, 19 (1976). However, this general "probability" must be distinguished from the "probability" or "likelihood of paternity" statistic which has recently been used as *inclusionary* evidence (affirmative proof of paternity). The latter "probability" is expressed statistically and is determined by using tables based on gene frequencies amongst ethnic groups. *Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 Fam. L.Q. 247, 260–61 (1976). Though the trial court in the instant case did enter a finding regarding the statistical probability of paternity derived from such tables, the court's oral opinion indicates that the court did not consider this inclusionary evidence in determining whether the State had carried its burden on the issue of paternity. The trial court relied on (1) the testimony of the mother, and (2) the evidence of nonexclusion.

[10]We note that appellant has not challenged the admission of the exclusionary blood test evidence on any basis other than the alleged inaccuracy caused by the failure to consider racial characteristics. Thus, we do not decide here whether, or to what extent, nonstatistical exclusionary blood test evidence is generally admissible, reliable, or probative.

.120 clearly states that "[a]n action under this chapter is a civil action governed by the rules of civil procedures." In most jurisdictions where paternity proceedings are regarded as civil in character, the burden of proof is by a preponderance of the evidence. 10 Am. Jur. 2d *Bastards* § 107 (2d ed. 1963). *See, e.g., Walsh v. Palma,* 154 Cal. App. 3d 290, 201 Cal. Rptr. 142, 145 (1984) (standard is preponderance even though case is brought by district attorney); *Shaw v. Seward,* 689 S.W.2d 37, 41 (Ky. Ct. App. 1985) (court analyzing the burden of proof issue under due process, concluding that due process only requires a preponderance of the evidence in paternity cases); *Minnich v. Rivera,* 509 Pa. 188, 506 A.2d 879, 882–83 (1986) (due process only requires a preponderance of the evidence in paternity cases); *Domigan v. Gillette,* 17 Ohio App. 3d 228, 479 N.E.2d 291 (1984) (since Legislature characterized the action as civil, burden is preponderance); *Keener v. State,* 347 So. 2d 398, 401 (Ala. 1977) (though the State brings the action, a paternity proceeding is civil in nature and burden of proof is the same as in any civil case); *G.L. v. S.D.,* 403 A.2d 1121, 1126–27 (Del. 1979); *Department of Health v. Smith,* 459 So. 2d 146, 150 (La. Ct. App. 1984).[11] Therefore, given our Legislature's clear characterization of these proceedings as civil,[12] the appropriate burden of proof is a preponderance of the evidence.

### SUFFICIENCY OF THE EVIDENCE

■ We must next determine whether the evidence presented below was sufficient to establish paternity by a pre-

---

[11]*But see Juliana C. v. Louis T.,* 126 Misc. 2d 731, 483 N.Y.S.2d 920, 927 (N.Y. Fam. Ct. 1984) (burden is more than preponderance, *i.e.,* clear and convincing evidence which is entirely satisfactory); *State ex rel. Toryak v. Spagnuolo,* ___ W. Va. ___, 292 S.E.2d 654 (1982) (because paternity proceeding has attributes of a criminal prosecution, burden is beyond a reasonable doubt); *Gregory v. Davis,* 214 Neb. 408, 334 N.W.2d 1, 2 (1983) (burden is preponderance, but testimony of prosecutrix must be corroborated). *Cf. State v. James,* 38 Wn. App. 264, 686 P.2d 1097 (1984) (paternity proceedings have quasi–criminal overtones).

[12]*See* Comment, *Paternity Determinations in Washington: Balancing the Interests of All Parties,* 8 U. Puget Sound L. Rev. 653, 672 n.127 (1985).

ponderance of the evidence. The mother testified that (1) she was 16 when she became pregnant; (2) she had intercourse with appellant approximately once a month between April 1977 and August 1977; (3) she had intercourse with appellant in the first week of June 1977; (4) she should have started her period during the second week of June; (5) she failed to start her period after the intercourse in the first week of June; (6) she had no intercourse with anyone other than appellant between May 27, 1977, and July 8, 1977; and (7) she gave birth to her child on March 16, 1978. The trial court found that this testimony, together with appellant's admission of contact (although not sexual contact) with the mother during the pertinent period, and the *exclusionary blood test* evidence was sufficient to establish paternity by "clear and convincing" evidence.[13] Though appellant denied the alleged sexual intercourse, the court evidently did not believe his testimony. Since such credibility determinations are the function of the trial court, *In re Sego,* 82 Wn.2d 736, 740, 513 P.2d 831 (1973), and since the testimony of the mother and the other evidence supporting paternity was substantial, we will not disturb the trial court's findings and conclusions relating to intercourse and paternity.

The judgment is affirmed.

COLE and UTTER, JJ. Pro Tem., concur.

Review denied by Supreme Court December 2, 1986.

---

[13]Again, we emphasize that the court did not consider the inclusionary test evidence in determining that the evidence was sufficient. Also, the court stated that the mother's testimony was "credible."