[No. 13745-3-II.   Division Two.   April 27, 1992.]

THE STATE OF WASHINGTON, *on the Relation of Stephanie Wise,* ET AL, *Respondent,* v. DOUGLAS E. TAYLOR, *Appellant.*

*Jack L. Burtch,* for appellant.

*H. Steward Menefee, Prosecuting Attorney,* and *Jennifer L. Wieland, Deputy,* for respondent.

GREEN, J.[*] — Douglas E. Taylor appeals an order of the Grays Harbor County Superior Court finding him to be the father of Stephanie Wise and ordering him to pay child support to Stephanie's mother, Lisa Holmeide (nee Wise), and to reimburse the State of Washington for public

---

[*]Judge Dale M. Green is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

assistance paid for the child's medical bills at birth and her prior support. We affirm.

On April 10, 1987, the Grays Harbor County prosecuting attorney filed a petition under RCW 26.26, the Uniform Parentage Act, seeking to establish the paternity of Stephanie Wise, who was born on September 10, 1985. The petition alleged that the child's mother, then Lisa Wise, had engaged in sexual intercourse during the period of conception with two men, one of whom was Douglas Taylor. The State applied for an order requiring all parties to submit to blood tests, to which both men agreed. The testing excluded the other man as the child's father, and he was dismissed from the case. On the other hand, the testing resulted in a high probability that Mr. Taylor was the girl's father. He denied paternity, however, and the action went to trial in September of 1989. From the judgment against him, Taylor appeals.

The evidence can be summarized rather briefly. Lisa Holmeide testified that she met Taylor in late 1983, that he moved into her house the following April and lived there until the end of October 1984, and that they regularly engaged in sexual intercourse during their relationship. He does not dispute those facts. Where the parties disagree, however, is whether or not they had intercourse again after he moved out at the end of October. He denies that they did; on the other hand, she testified that they had sexual relations on several occasions afterward, including twice in the first half of December, when the medical evidence indicates conception occurred. She further described various physical characteristics that the child shares with Mr. Taylor, including eye color and unusual height.

The most crucial testimony, however, involved the blood testing results. The mother, the child, and the alleged fathers, Douglas Taylor and the other man, all submitted to tests. The samples were sent to a specialized laboratory in Baltimore, Maryland, for analysis. A scientist, Dr. James Geyer, interpreted the test results for the court and concluded that Taylor was 221 times more likely to be the father than any other male in the random, unrelated Caucasian

population; or putting it another way, that the scientific evidence yielded a 99.55 percent chance that Taylor is the child's father. This is a civil action. RCW 26.26.120(1); obviously, a 99.55 percent probability of paternity, when not contraindicated by other evidence (such as compelling evidence of the putative father's sterility or absence during the period of conception), far exceeds the applicable standard of proof by a preponderance of the evidence. Thus, substantial evidence supports the trial court's decision, notwithstanding Taylor's denial that he and the mother had sexual intercourse during the period of conception.

Taylor makes several arguments on appeal, however. First, he contends that the trial court should not have considered the blood test results until it initially considered other evidence of paternity, such as whether the mother had intercourse with the alleged father within the conception period and whether she had intercourse with anyone else during that time. He relies on a Utah case, *Kofford v. Flora*, 744 P.2d 1343 (Utah 1987), which states that in presenting such blood test results,

> [t]he factfinder must also be informed with the greatest clarity possible that it must disregard the probability of paternity statistic if it finds that the putative father did not have sexual intercourse with the mother during the period of conception. Evidence of the probability of paternity is invalid if there is no independent evidence establishing that the putative father had intercourse with the mother.

744 P.2d at 1352.

We agree with the Utah court, but find no error in the way the scientific evidence was presented in this case. In the first place, Dr. Geyer testified exactly as the Utah case directs. In the second place, we disagree with appellant's interpretation of the case, *i.e.*, his view that the judge cannot even consider the scientific evidence "where there is a serious question of sexual intercourse during the possible period of conception." This argument misconceives the role of scientific evidence in a paternity action.

■ RCW 26.26.110 provides that evidence relating to paternity may include: (1) evidence of sexual intercourse

between the mother and alleged father "at any possible time of conception"; (2) expert opinion concerning the statistical probability of the alleged father's paternity based upon the duration of pregnancy; (3) expert opinion "concerning the impossibility or the statistical probability of the alleged father's paternity based upon blood test results"; (4) medical or anthropological evidence related to the alleged father's paternity based on tests performed by experts; (5) all other relevant evidence. The statute clearly intends consideration of blood test results along with the other relevant evidence, and not only if the alleged father admits having intercourse with the mother during the period of conception.

The Washington Supreme Court has said that if the alleged father denies having sexual intercourse with the mother during the period of conception, the trial court must hold a hearing to determine that issue before requiring him to take a blood test, in order to be satisfied, at least prima facie, of the fact of sexual intercourse between the parties as a condition to requiring the test. *State v. Meacham*, 93 Wn.2d 735, 741, 612 P.2d 795 (1980). *See also* RCW 26.26.100(1) (court shall order blood tests if it appears, upon a showing by the party alleging paternity, "that a reasonable possibility exists that the requisite sexual contact occurred."). In this case, however, we are well past the issue of whether the court should have ordered a blood test, because Taylor *agreed* to submit to testing. Under the statute, therefore, the trial court could consider the test results, as presented by an expert, along with other evidence of paternity such as the witnesses' accounts of their sexual relations, in deciding whether Taylor is the child's father. The Utah case is consistent with this approach, and we agree that the trial court should not consider the scientific evidence if there is no other evidence that the alleged father had intercourse with the mother during the conception period. That is not what happened here, however. Lisa Holmeide did provide evidence of such intercourse. *See State ex rel. Coyle-Reite v. Reite*, 46 Wn. App. 7, 728 P.2d 625 (1986).

The judgment is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washinton Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ALEXANDER, J., and SCHUMACHER, J. Pro Tem., concur.