[No. 17757-9-II. Division Two. March 22, 1996.]

THE STATE OF WASHINGTON, *on behalf of* NICOLE R. McMICHAEL, *Respondent,* v. LEON C. FOX, *Appellant.*

942

*Michael J. Slish*, for appellant.
*Gary P. Burleson, Prosecuting Attorney*, for respondent.

BRIDGEWATER, J. — We are asked by Leon C. Fox to review the action that determined him to be the father of a child under RCW 26.26. We hold that the State violated its duty as guardian ad litem by failing to test another possible father of whom it was aware or to provide an explanation of its failure to do so. Thus, we reverse and remand for the appointment of an independent guardian ad litem for the child and a new trial.

The State, as guardian ad litem for the minor child, Nicole R. McMichael, brought a successful action alleging that Fox was Nicole's natural father.

Nicole's mother, Rebecca McMichael, had intercourse

with Fox without birth control around July 4, 1986. The baby was born 10 months later on April 9, 1987, and was two weeks late. Fox does not assign error to the date of the child's birth, or to the blood test indicating the probability of Fox's paternity to be 99.41 percent,[1] but disputes having intercourse during the conception period. The trial court accepted the mother's version, used blood test results and photographic evidence for comparison, and determined Fox to be the father.

Rebecca revealed that she had intercourse with another identified man, S.R., during the period of conception.

Without stating what efforts it made to locate S.R., the State simply said it could not find him, and therefore did not join him in the action. Pursuant to statute and case law, the trial court granted the State's motion in limine to exclude all reference to S.R.

## I

Fox argues that the State failed as guardian to protect the child's due process interest in an accurate determination of paternity by failing to justify why it could not locate S.R. over the course of three years. The State agrees that, as guardian, it had a duty to make a reasonable inquiry to identify and locate other possible fathers, as stated in *State ex rel. Henderson v. Woods*, 72 Wn. App. 544, 865 P.2d 33 (1994). But, it argues that this duty does not require it to show diligent effort to find S.R.

The court in *State v. Santos*, 104 Wn.2d 142, 147, 702 P.2d 1179 (1985), stated that a guardian ad litem represents a child's due process interests, which are to "establish a familial bond and protect himself from an erroneous determination of parentage." Normally, a child's due

---

[1]There is some question as to the last figure in the paternity percentage. The trial court notes a "99.49% exclusion" in finding of fact 3, and the letter from the paternity lab shows a 99.41 percent probability that Fox is the father. The laboratory letter explains that this figure means that paternity is "extremely likely."

process interests are represented by a separate guardian ad litem. In this case, however, and in *Woods*, the State acted as guardian ad litem for the child pursuant to RCW 74.20.310. The court in *Santos* addressed the resulting conflict between the State's interest in obtaining immediate support for the child and the child's interest in an accurate determination of paternity. *Santos*, 104 Wn.2d at 147-48. That court held that the State, when it assumes the role of guardian, should at least identify whether other potential fathers exist. *Santos*, 104 Wn.2d at 150.

We recognized in *Woods*, however, that this identification requirement, without more, does not prevent the State's dual representation from compromising the child's interest in finding the correct father. The absence of a record prevented us from determining if the State adequately investigated the possibility of other potential fathers. Thus, we set forth guidelines on remand to safeguard the child's interests. Stating that the due process interests were those of the child, we explained in dicta that only the combination of high probability blood tests *and* an absence of other possible fathers would relieve the court of appointing an independent guardian ad litem. *Woods*, 72 Wn. App. at 555.

■ Though these guidelines were safeguards specific to the facts in *Woods*, we follow them here with some modification. If we were to apply the *Woods* safeguards to this case, a separate guardian ad litem would be mandatory because another possible father was identified. But *Woods* does not discuss what the State, as guardian, must do in the event it knows of another possible father and cannot find him. The State should not be precluded from acting as guardian when it identifies other possible fathers. However, as we stated in *Woods*, we cannot assume that the State adequately protected the child's interests without proof in the record. Thus, we hold that, if the State functions in the capacity of guardian ad litem, it has an affirmative duty not only to identify, but to show to the court reasonable efforts to locate any possible

fathers. If it fails to make the requisite showing, the trial court must appoint a separate guardian.

In the instant case, the State did not show reasonable efforts to locate S.R. To the contrary, the record indicates that it simply asserted that it did not know his location.

As in *Woods*, we cannot assume from the record before us that the State, as guardian, adequately protected the due process interests of the child. To protect the child's due process rights, we remand for appointment of an independent guardian ad litem who will actively pursue the investigation of the other potential parent and arrange for blood tests, if he can be located. We consider the remaining issues to clarify the parties's duties in the event of a new trial.

## II

Fox argues under *Woods* that RCW 26.26.090 requires the State, as guardian, to join S.R. as a potential father or to show why joinder was impossible.

That statute provides the following:

**RCW 26.26.090 Parties**

(1) . . . The natural mother, each man presumed to be the father under RCW 26.26.040, and a man or men alleged to be the natural father *shall* be made parties or, if not subject to the jurisdiction of the court, shall, if possible, be given actual notice of the action and an opportunity to be heard in a manner as the court may prescribe.

RCW 26.26.090(1) (emphasis added).

■ When a statute is free of ambiguity, statutory language is given effect exactly as it is written, and the rules of construction will not apply. *State v. Acheson*, 75 Wn. App. 151, 153, 877 P.2d 217 (1994).

■■ The statute plainly contemplates that only those

men who are alleged to be the natural father *and* are subject to the jurisdiction of the court shall be made parties. Because there was no evidence that the State knew of S.R.'s whereabouts, the State was not required to join S.R. under RCW 26.26.090. Moreover, if Fox had any information about another possible father, it was his responsibility under this statute to bring that to the attention of the child's representative, to the court, and to make a record of the information so provided.[2] *See Woods,* 72 Wn. App. at 556. He could then have asked the trial court to order S.R. to undergo blood tests pursuant to RCW 26.26.100(1).[3]

Furthermore, sections (3) and (4) of RCW 26.26.090 provide that failure to join an alleged or presumed father does not prevent the court from adjudicating paternity. Those portions of the statute read as follows:

> (3) The failure or inability to join as a party an alleged or presumed father does not deprive the court of jurisdiction to adjudicate some or all of the issues based on the evidence and parties available to it.

> (4) If more than one party is alleged to be the father of the child, the default of a party shall not preclude the court from finding any other party to be the father of the child.

RCW 26.26.090(3) and (4).

Because a new trial shall follow, we need not address the evidentiary issues raised by Fox concerning (1) exclusion of evidence, (2) anthropological evidence, or (3) insufficient evidence.

We reverse and remand for a new trial with the ap-

---

[2]RCW 26.26.090(2) provides: "*Any party* may cause to be joined as additional parties other men alleged to be the father of the child or any other person necessary for a full adjudication of the issues." (Emphasis added.)

[3]RCW 26.26.100(1) provides:

The court may, and upon request of a party shall, require the child, mother, and any alleged father who has been made a party to submit to blood tests or genetic tests of blood, tissues, or other bodily fluids. . . . The court shall order blood or genetic tests if it appears that a reasonable possibility exists that the requisite sexual contact occurred.

pointment of a guardian ad litem to make reasonable efforts to locate S.R. and to obtain blood samples from him, if possible.

SEINFELD, C.J., and MORGAN, J., concur.

Reconsideration denied May 17, 1996.

Review granted at 130 Wn.2d 1016 (1996).