[No. 64324-5.   En Banc.]
Argued March 26, 1997.     Decided June 5, 1997.

THE STATE OF WASHINGTON, *on the Relation of Nichole R. McMichael, Petitioner,* v. LEON C. FOX, *Respondent.*

*Gary P. Burleson, Prosecuting Attorney,* and *Michael E. Haas, Deputy,* for petitioner.

*Michael J. Slish,* for respondent.

*Rebecca McMichael,* pro se.

TALMADGE, J. — We are asked to determine if the State satisfied its duty as guardian ad litem of a child in a paternity action under the Uniform Parentage Act (UPA), RCW 26.26, where the man found to be the father had sexual intercourse with the mother near the time of the

child's conception, resembled the child, and had a blood/genetic test indicating a 99.41 percent likelihood of a match; however, another possible father was not located, joined in the action, or subjected to a blood/genetic test.

Where there is overwhelming evidence of paternity, including blood/genetic test results, testimony from the mother and alleged father regarding sexual relations near the time of conception, and evidence of a resemblance between the alleged father and the child, the State satisfies its duty as the child's guardian ad litem under constitutional due process and RCW 74.20.310 to secure a swift and accurate determination of paternity even though another possible father is not joined in the action.

## ISSUE

Did the State satisfy its duty as guardian ad litem for a child in a paternity proceeding where overwhelming evidence pointed to a man as the natural father, and another possible father was neither located nor joined in the action?

## FACTS

Rebecca McMichael had sexual relations with two men at or near the time of conception of her daughter: Leon Fox, with whom she had lived off and on, and S.R. Mc-Michael claimed her sexual relations with Fox ended in July 1986; Fox admitted to sexual relations with Mc-Michael in May or June 1986. Nicole McMichael was born on April 9, 1987.

Ms. McMichael received public assistance from the State, and subsequently identified Fox as Nicole's father. Ms. McMichael had also advised the State of S.R.'s identity after Nicole's birth, but the State could not locate S.R.[1]

---

[1]The State asserts S.R. could not be located, but there is no record of the specific steps actually taken by the State to locate him.

Acting under RCW 74.20.310 as guardian ad litem for Nicole, the State filed a paternity action in the Mason County Superior Court on March 19, 1990 naming Fox as the alleged father.

Fox underwent blood/genetic tests performed by the Blood Center of Southeastern Wisconsin in accordance with medically accepted procedures. The tests indicated Fox's probability of paternity to be 99.41 percent. Yet, when Fox had his blood drawn on November 14, 1990, he became aware of another possible father, S.R.

Based on the blood/genetic test results, the State filed a motion for summary judgment on November 20, 1991. Fox successfully resisted the motion for summary judgment, asserting his knowledge of S.R., another possible father, and indicating the State had not responded to his discovery requests concerning other potential fathers. In denying the State's summary judgment motion on February 5, 1992, the trial court also ordered production of the information requested by Fox.

Counsel for Fox took Ms. McMichael's deposition on February 11, 1992, when she testified to her relationships with Fox and S.R.

Prior to trial, the State moved in limine under RCW 26.26.120[2] to exclude any reference to S.R. because he had not been joined as a party to the action.[3] Fox objected, arguing the State was required to join all possible fathers. The State asserted it could not locate S.R., who was not a party to the action against Fox, and it was not obligated to join S.R. The State also asserted that Fox could have

---

[2]RCW 26.26.120(4) states:

In an action against an alleged father, evidence offered by the alleged father with respect to a man who has not been joined as a party concerning the nonparty's sexual intercourse with the mother at or about the probable time of conception of the child is admissible in evidence only if the nonparty has undergone and made available to the court blood or genetic tests, the results of which do not exclude the possibility of the nonparty's paternity of the child.

[3]Fox did not join S.R. as a party to this action although RCW 26.26.090(2) specifically authorizes "any party" to join other possible fathers as parties to the paternity action.

joined S.R. The trial court granted the State's motion, excluding any reference at trial to S.R.

Trial commenced on January 11, 1993. Fox's blood/genetic test results were admitted at trial without objection. In addition to the test results, other evidence of paternity appears in the record. McMichael stated she had had sexual intercourse with Fox without birth control near the appropriate time period for Nicole's conception. McMichael did not have a menstrual period after having sexual intercourse with Fox. Although Fox denied he was Nicole's father, he admitted at trial he had had sexual intercourse with McMichael around the time Nicole was conceived. McMichael listed Fox as the father on medical forms submitted to her physician in case of problems at birth. Utilizing photographs, the trial court found Nicole resembled Fox. McMichael stated, "Nicole looks just like her father," referring to Fox.

The trial court determined Fox fathered Nicole and owed her a duty of support, but the Court of Appeals, Division Two, reversed and remanded for a new trial on the grounds that the State failed to adequately fulfill its duties as Nicole's guardian ad litem. The Court of Appeals determined the trial court had jurisdiction under RCW 26.26.090 although the State had not joined S.R. as a possible father. Nevertheless, the Court reasoned that the State breached its duty as Nicole's guardian ad litem in failing to take reasonable steps to locate and test other possible fathers, citing *State v. Santos*, 104 Wn.2d 142, 702 P.2d 1179, 70 A.L.R. 4th 1021 (1985), and *State ex rel. Henderson v. Woods*, 72 Wn. App. 544, 865 P.2d 33 (1994). *State ex rel. McMichael v. Fox*, 80 Wn. App. 941, 912 P.2d 518 (1996). We granted review.

## ANALYSIS

Duties of the State as Guardian Ad Litem in Paternity Cases

Paternity actions under Washington law are governed

by procedures set forth in RCW 26.26, the Uniform Parentage Act (UPA). *See In re Custody of Brown*, 77 Wn. App. 350, 352, 890 P.2d 1080 (1995); *Gonzales v. Cowen*, 76 Wn. App. 277, 281, 884 P.2d 19 (1994). RCW 26.26.040 provides for a presumption of paternity in certain instances such as birth of the child during marriage, taking the child into the home and openly holding the child out as his, or acknowledging paternity.[4] Under the UPA, the child, natural mother, each presumptive father, and "a man or men alleged to be the natural father shall be made parties" to the paternity proceeding. RCW 26.26.090(1). The fact that all possible fathers have not been joined does not deprive the court of jurisdiction to determine paternity. RCW 26.26.090(3).[5]

The UPA sets forth the evidence appropriate to establish paternity. Former RCW 26.26.110[6] provided that

[e]vidence relating to paternity may include:

(1) Evidence of sexual intercourse between the mother and alleged father at any possible time of conception;

(2) An expert's opinion concerning the statistical probability of the alleged father's paternity based upon the duration of the mother's pregnancy;

[4]There is no presumptive father in this case. Neither Fox nor S.R. met the requirements of RCW 26.26.040(1). RCW 26.26.040 was amended in 1994 to state: "(1) A man is presumed to be the natural father of a child for all intents and purposes if: . . . (g) Genetic testing indicates a ninety-eight percent or greater probability of paternity." We neither apply this presumption retroactively here, nor address its constitutionality. The statutory presumption may be rebutted by clear, cogent and convincing evidence. RCW 26.26.040(2).

[5]A defendant may seek joinder of another possible father. *See* RCW 26.26.090(2); *see also State ex rel. Henderson v. Woods*, 72 Wn. App. 544, 556, 865 P.2d 33 (1994); *Murillo v. Perez*, 206 N.J. Super. 196, 502 A.2d 54, 58-59 (1985) (interpreting a similar version of the UPA and holding that it is the defendant's pretrial obligation to apply for an order joining another man named by the defendant as having had access to the mother during the probable period of conception).

[6]Subsection (3) of the statute was amended in 1994 as follows:

An expert's opinion concerning the impossibility or the statistical probability of the alleged father's paternity based upon blood or genetic test results; . . .

LAWS OF 1994, ch. 146, § 2.

(3) An expert's opinion concerning the impossibility or the statistical probability of the alleged father's paternity based upon blood test results;

(4) Medical or anthropological evidence relating to the alleged father's paternity of the child based on tests performed by experts. If a man has been identified as a possible father of the child, the court may, and upon request of a party shall, require the child, the mother, and the man to submit to appropriate tests; and

(5) All other evidence relevant to the issue of paternity of the child.

■ Paternity proceedings brought under the UPA are civil actions governed by the rules of civil procedure. RCW 26.26.120(1); *see State ex rel. Taylor v. Dorsey*, 81 Wn. App. 414, 420, 914 P.2d 773 (1996); *Woods*, 72 Wn. App. at 549; *State ex rel. Wise v. Taylor*, 65 Wn. App. 395, 397, 828 P.2d 1143 (1992); *State ex rel. Goodner v. Speed*, 26 Wn. App. 648, 650, 613 P.2d 1207 (1980) (the UPA (RCW 26.26) has not converted filiation proceedings into a criminal prosecution), *aff'd*, 96 Wn.2d 838, 640 P.2d 13 (1982), *cert. denied*, 459 U.S. 863, 103 S. Ct. 140, 74 L. Ed. 2d 119 (1982). *See also State v. Bowen*, 80 Wn.2d 808, 810, 498 P.2d 877 (1972); *State v. Schimschal*, 73 Wn.2d 141, 144, 437 P.2d 169 (1968). The appropriate burden of proof in paternity actions under RCW 26.26 is a *preponderance of the evidence. Dorsey*, 81 Wn. App. at 420; *Woods*, 72 Wn. App. at 549; *State ex rel. McGuire v. Howe*, 44 Wn. App. 559, 569, 723 P.2d 452, *review denied*, 107 Wn.2d 1014 (1986).

■ Apart from the statutory requirements of the UPA, constitutional principles are involved in the determination of paternity. The overarching principle in paternity actions is the child's constitutional right to due process associated with the determination of paternity. *See Santos*, 104 Wn.2d at 146-50. The touchstone for this constitutional right is the accuracy of the paternity determination. *See Santos*, 104 Wn.2d at 150; *see also State v. Meacham*, 93

Wn.2d 735, 737-38, 612 P.2d 795 (1980) (the State's interest in accurately determining the parentage of the children is compelling).

To effectuate the child's constitutional right to an accurate determination of paternity, RCW 26.26.090(1) directs that the minor child shall in certain circumstances be represented by a general guardian or guardian ad litem. See RCW 26.26.090(1); RCW 74.20.310. In paternity actions like this case, where public support for the child has been paid, the State may act as guardian ad litem for the child pursuant to RCW 74.20.310.[7] Two cases have discussed the duty of the State when acting as a guardian ad

---

[7]RCW 74.20.310 was amended effective September 1991 (after commencement of this action in March 1990, but before the State's failed November 1991 summary judgment motion or subsequent trial in January 1993). The former version of the statute read:

The provisions of RCW 26.26.090 requiring appointment of a general guardian or guardian ad litem to represent the child in an action brought to determine the parent and child relationship do not apply to actions brought under chapter 26.26 RCW if:

(1) The action is brought by the attorney general on behalf of the department of social and health services, the child, or the natural mother; or

(2) The action is brought by any prosecuting attorney on behalf of the state, the child, or the natural mother when referral has been made to the prosecuting attorney by the department of social and health services requesting such action.

The court, on its own motion or on motion of a party, may appoint a guardian ad litem when necessary.

The current version of RCW 74.20.310 provides:

(1) The provisions of RCW 26.26.090 requiring appointment of a general guardian or guardian ad litem to represent the child in an action brought to determine the parent and child relationship do not apply to actions brought under chapter 26.26 RCW if:

(a) The action is brought by the attorney general on behalf of the department of social and health services and the child; or

(b) The action is brought by any prosecuting attorney on behalf of the state and the child when referral has been made to the prosecuting attorney by the department of social and health services requesting such action.

(2) On the issue of parentage, the attorney general or prosecuting attorney functions as the child's guardian ad litem provided the interests of the state and the child are not in conflict.

litem under RCW 74.20.310, *Santos*, 104 Wn.2d 142, and *Woods*, 72 Wn. App. 544.

In *Santos*, decided under the older version of RCW 74.20.310, the putative father (Santos) and the mother (Montes), contemplating marriage, inquired at the prosecutor's office how to establish Santos' paternity of Montes' child (Ambrosia). Santos and Montes believed paternity proceedings would be less expensive than adoption. Santos was advised of his right to an attorney and his right to have blood tests taken to determine paternity. Santos chose not to have blood tests taken and simply stipulated to paternity and to the judgment and order. *Santos*, 104 Wn.2d at 144. After a falling out with Montes, Santos sought to vacate the judgment and order of paternity. We vacated the judgment of paternity because the paternity proceeding failed to protect the interests of the child, *id.* at 143, noting that even where a party stipulates to paternity, an investigation is required to insure the accuracy of the determination of paternity. *Id.* at 149.

In *Woods*, Woods apparently acknowledged paternity of the child after viewing blood test results in open court, but there was no record of the paternity proceedings below including any supporting affidavit regarding the blood test. The Court of Appeals held Woods' admission alone was insufficient to support an *accurate* finding of paternity as required under *Santos*. *See Woods*, 72 Wn. App. at 547-53 ("We are not able to determine, based on the record before us, if the State adequately investigated the possibility of other potential fathers *or otherwise protected [the child's] interests.*" *Id.* at 551 (emphasis added)). In dicta, *Woods* went beyond *Santos* in requiring that an independent guardian ad litem be appointed if the State

(3) The court, on its own motion or on motion of a party, may appoint a guardian ad litem when necessary.

(4) The summons shall contain a notice to the parents that the parents have a right to move the court for a guardian ad litem for the child other than the prosecuting attorney or the attorney general subject to subsection (2) of this section.

failed to show "reasonable inquiry" to identify any other man who could have fathered the child.

> If, on retrial, the State produces blood tests that indicate with near certainty that Woods fathered [the child], and further shows that after reasonable inquiry it was not able to identify any other men with whom [the mother] may have been sexually active around the time of conception, the *Santos* rationale would not require the appointment of a guardian ad litem. On the other hand, if the State fails to make the proper showing, the trial court must assure that [the child's] due process interest is protected by the appointment of an appropriate guardian ad litem. Absent a record, we will not assume that the child's interests were protected adequately by the State.

*Woods*, 72 Wn. App. at 555.

The Court of Appeals here, interpreting *Santos* and *Woods*, held "the State violated its duty as guardian ad litem by failing to test another possible father of whom it was aware or to provide an explanation of its failure to do so[,]" *Fox*, 80 Wn. App. at 942, and remanded the case "for a new trial with the appointment of a guardian ad litem to make reasonable efforts to locate S.R. and to obtain blood samples from him, if possible." *Id.* at 946-47. The Court of Appeals, relying on *Woods*, opined "if the State functions in the capacity of guardian ad litem, it has an affirmative duty not only to identify, but to show to the court reasonable efforts to locate any possible fathers. If it fails to make the requisite showing, the trial court must appoint a separate guardian." *Id.* at 944-45.[8]

The Court of Appeals has incorrectly extrapolated from *Santos* a requirement that the State, when acting as

---

[8]The Court of Appeals mistakenly believed the State did little to locate S.R. and surprised the trial court on the day of trial with S.R.'s identity. *Fox*, 80 Wn. App. at 945. This is not the case. Both Fox and the trial court knew of S.R.'s existence well before trial. Fox knew of S.R.'s existence from the date of his blood test some two years prior to trial. S.R.'s existence was made known to the trial court at least 13 months prior to trial, as S.R.'s identity was discussed in connection with the State's summary judgment motion. Moreover, the record indicates the State did not know of S.R.'s whereabouts, although it attempted to locate him. *Id.* at 946.

guardian ad litem under RCW 74.20.310, must make a showing of reasonable efforts to locate and test other possible fathers, or an independent guardian must be appointed to do so. *See Woods*, 72 Wn. App. at 555; *Fox*, 80 Wn. App. at 944-45.

In *Santos*, we were concerned with the accuracy of the paternity determination in the context of the potential conflicting interests of the State in securing support for the child and the child's interest in an accurate determination of paternity:

> "[i]t is in the child's interest not only to have it adjudicated that *some* man is his or her father and thus liable for support, but to have *some assurance* that the correct person has been so identified. When the state initiates paternity proceedings, whether on behalf of the mother . . . or the child . . . the state owes it to the child to ensure that an accurate determination of parentage will be made."

*Santos*, 104 Wn.2d at 149-50 (citations omitted) (emphasis added). In holding the State failed to protect the interests of the child the Court noted "[a] prudent guardian for the child would not blindly accept an admission of paternity from one of several potential fathers without further investigation and scientific evidence of paternity[,]" *id.* at 150, and offered guidelines addressing the particular facts before it.

> Since many nonfathers tend to admit paternity on the basis of mistake or threats, at least a cursory check into available anthropological and biological evidence of paternity is essential. The State should at least identify whether other potential fathers exist (1) by asking the natural mother whether she had sexual relations with any other men within 1 month before or after the calculated date of conception; and (2) by comparing the physical characteristics of the father, child, and mother. . . . [R]outine employment of blood grouping tests to exclude biologically impossible fathers is also desirable when a question as to paternity is raised by preliminary inquiry.

*Id.* at 150 (citations omitted). Regarding the need for an independent guardian ad litem, we stated:

RCW 74.20.310 provides authority for the trial court to appoint a guardian ad litem when necessary. *Appointment is necessary in a situation such as this, where there was no scientific proof of parentage* and more than one potential father could have been identified with minimum investigation.

*Id.* at 150 (emphasis added).

██ ██ In the present case, the State satisfied its duty while acting under RCW 74.20.310 as Nicole's guardian ad litem, given the overwhelming evidence it had accumulated as to Fox's paternity of Nicole. In particular, the State satisfied its duty under *Santos* when it had evidence from McMichael and Fox of sexual relations at or near the appropriate time for Nicole's conception and that Ms. McMichael had no menstrual period after her relations with Fox,[9] evidence of physical similarities between Fox and Nicole,[10] and blood/genetic test results.[11] Moreover, the record does not evince a physical incapacity by Fox or McMichael to conceive a child.[12] Given the civil burden of

---

[9]*See* RCW 26.26.110(1); *see also Taylor*, 65 Wn. App. at 398 (evidence of paternity includes witnesses' accounts of their sexual relations); *Rabb v. Estate of McDermott*, 60 Wn. App. 334, 343, 803 P.2d 819 (1991) (evidence of paternity includes testimony regarding sexual intercourse around the time of conception); *State ex rel. Coyle-Reite v. Reite*, 46 Wn. App. 7, 10, 728 P.2d 625 (1986) (uncontradicted evidence before the court was that the parties had the requisite sexual contact during the time when conception would have occurred); *State ex rel. McGuire v. Howe*, 44 Wn. App. 559, 570, 723 P.2d 452 (substantial evidence of paternity included the mother's testimony regarding the time of sexual intercourse and absence of her menstrual period thereafter), *review denied*, 107 Wn.2d 1014 (1986).

[10]*See* RCW 26.26.110(5); *see also Rabb*, 60 Wn. App. 334 (Court of Appeals affirmed a determination of paternity based in part on testimony and photographs concerning the child's physical similarities with the alleged father and his sons).

[11]*See* RCW 26.26.110(3); *see also Taylor*, 65 Wn. App. at 397 (blood testing results indicating a 99.55 percent probability of paternity, when not contradicted by other evidence (such as compelling evidence of the putative father's sterility or absence during the period of conception), far exceed the applicable standard of proof by a preponderance of the evidence).

[12]Fox asserted to McMichael that he could not sire children, but while living with Fox, McMichael became pregnant by him on two occasions. Both pregnancies were terminated. *See* Clerk's Papers at 77-82, 93. Thus, there was no "compelling evidence of the putative father's sterility or absence during the period of conception[,]" *see Taylor*, 65 Wn. App. at 397.

proof in paternity actions, the State plainly met its burden under the UPA.

Unlike *Woods*, this is not a case of the complete absence of a trial record on paternity. Neither is it a case like *Santos* where nothing in the record supported a possible father's admission of paternity. *Santos* requires "that the procedures of a paternity determination ensure accuracy." *Santos*, 104 Wn.2d at 150. The guidelines of *Santos* were followed here. The State did inquire about other sexual relations the mother had around the time of conception, the physical characteristics of Fox and the child were compared, and blood/genetic tests were performed. Unlike the circumstances in *Santos* and *Woods*, overwhelming evidence *in the record* indicated Fox to be the natural father of the child. Since there *was* scientific proof of parentage, no independent guardian ad litem was even required, *Santos*, 104 Wn.2d at 150, and the State did not breach its duty when acting as Nicole's guardian ad litem under RCW 74.20.310.[13]

For purposes of analyzing whether the State has satisfied its duty to protect the constitutional rights of a child in a paternity action when acting as the child's guardian ad litem under RCW 74.20.310, we reaffirm the *Santos* test. We disapprove of the requirement articulated by the Court of Appeals in *Woods* and in this case that the State is required to make a showing of diligent efforts to locate any and all possible fathers. The State satisfies its duty to the child to assure an accurate determination of paternity if it accumulates overwhelming evidence pointing to a particular man as the father of the child.[14] That man is, of course, free to join other potential fathers of the child pursuant to RCW 26.26.090(2).

Ultimately, we believe the requirement of a showing of

---

[13]Fox did not move below to secure appointment of an independent guardian ad litem for Nicole. RCW 74.20.310.

[14]The State may wisely choose as a child's guardian ad litem to locate and test possible fathers if the evidence does not overwhelmingly point to one as the child's father.

an effort to locate all other possible fathers may work against the constitutional interest of the child, if the evidence points to one man as the father. Where the State must delay a paternity proceeding to investigate several unlikely, but possible, fathers, even though the State may have sufficient evidence to establish the paternity of an identified and accessible alleged father, the child is deprived of the swift and accurate determination of paternity which due process compels.[15]

## CONCLUSION

A child has a constitutional right to a swift and accurate determination of paternity. When the State acts as the child's guardian ad litem under RCW 74.20.310, it satisfies its duty to protect the child's right by evaluating the paternity of possible fathers, as we articulated in *Santos*. If the State accumulates overwhelming evidence that a particular man is the child's father, the State is not obliged to locate and join in the paternity action every other possible father of the child to satisfy its duty. The Court of Appeals is reversed and the trial court's determination of paternity is reinstated.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and SANDERS, JJ., concur.

---

[15]Fox argued a number of additional issues to the Court of Appeals including the failure of the State to join S.R. as a party, the trial court's order in limine excluding evidence of S.R. pursuant to RCW 26.26.120, the admissibility of photographs as evidence of paternity, and sufficiency of the evidence to support a determination of paternity. We decline to address these issues independently as Fox did not discuss them in his Answer to the State's Pet. for Review. RAP 13.7(b).