[No. 51178–1. En Banc. July 11, 1985.]

THE STATE OF WASHINGTON, ET AL, *Respondents,* v. MIGUEL ANDRE SANTOS III, *Appellant.*

*John R. Kramer* and *Kramer & Sulkosky,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Barbara Corey–Boulet, Deputy,* for respondents.

UTTER, J.—Maternity has been said to be a matter of fact and paternity a matter of opinion. Although science cannot with certainty determine a child's father, it has made great strides to help ensure that the wrong man will not be held responsible.[1] Despite the numerous burdens and benefits of being a father, however, it is the child who has the most at stake in a paternity proceeding. In this matter, Miguel Santos appeals from denial of a motion to vacate a stipulated judgment and order of paternity entered against him on November 16, 1982. Although we find that the trial court properly denied Santos' motion to vacate the judgment based on fraud or mistake, we vacate the judgment because the paternity proceeding failed to protect the interests of the child whose paternity was in question. It would be ironic to find issues of parent–child ties are of constitutional dimension when the parents'

---

[1]*See* Ellman & Kaye, *Probabilities and Proof: Can HLA and Blood Group Testing Prove Paternity?*, 54 N.Y.U. L. Rev. 1131 (1979); Terasaki, *Resolution by HLA Testing of 1,000 Paternity Cases Not Excluded by ABO Testing,* 16 J. Fam. L. 543 (1977–1978); Beautyman, *Paternity Actions—A Matter of Opinion or a Trial of the Blood?,* 4 J. Legal Med. 17 (April 1976).

rights are involved but not when the child's are at stake.

Ambrosia Lynn Montes was born April 3, 1982. Her mother, Vanessa Montes, began dating Miguel Santos, the putative father, on June 28, 1981. The two first had sexual relations a few days later, just after Montes had her menstrual period. At the time of her July period, she merely "spotted" and missed her August period altogether. A doctor later confirmed that Montes was pregnant.

Throughout this time Montes was estranged from her husband. During the pregnancy she and Santos discussed the possibility that Santos was not the father. Montes raised the possibility that the baby's father could be Nate Bryant, with whom she had sexual relations in early June. She and Santos decided, however, that the baby was Santos'. Santos broke off his relationship with Montes in October 1981, allegedly after hearing from a friend that in August Montes had engaged in sexual relations with Eric Mason. Santos and Montes reconciled in February of 1982.

Montes gave birth to Ambrosia while Santos was in basic training. After his return, Santos saw Ambrosia almost every night and established a father–daughter relationship with her.

By November 1982 Santos and Montes were contemplating marriage. They went to the prosecutor's office to inquire how to establish Santos' paternity of Ambrosia. Montes needed to establish the child's paternity in order to obtain a decree of dissolution and both believed that paternity proceedings would be less expensive than adoption.

A deputy prosecuting attorney advised Santos of his right to an attorney and his right to have blood tests taken to determine paternity. Santos chose to not have blood tests taken and simply stipulated to paternity and to the judgment and order. He agreed to pay $200 in child support monthly.

On May 12, 1983, Santos and Montes had an argument and terminated their relationship. They disagree whether Montes told Santos during the argument that Ambrosia is not his child.

## I

Petitioner Santos' original motion to vacate appears to be based on CR 60(b)(1) and (4), which allow a court to relieve a party from an order for:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

. . .

(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

In his affidavit in support of the motion to vacate, Santos alleged that the child has black features and therefore cannot be his child because both he and the mother are caucasian. Both other possible fathers are black. Santos alleges that Ambrosia's black characteristics did not assert themselves until after he signed the paternity stipulation.

Vacation of a judgment under CR 60(b) is within the trial court's discretion. We will overturn the trial court only if it plainly appears that its discretion has been abused. *Haller v. Wallis,* 89 Wn.2d 539, 573 P.2d 1302 (1978). No fraud or mistake was shown. The photographs of Ambrosia offered by Santos as evidence of her racial characteristics were in his possession at the time he signed the stipulation. Santos introduced no evidence to support his allegation that Montes misled him as to his paternity of Ambrosia. His original motion is not well taken.

## II

On appeal of the trial court's denial of his motion to vacate, however, Santos raises a new issue which has merit. Appeal from denial of a CR 60(b) motion is generally limited to the propriety of the denial. *Bjurstrom v. Campbell,* 27 Wn. App. 449, 450–51, 618 P.2d 533 (1980). A party may, however, raise for the first time on appeal a claim that the trial court lacked jurisdiction. RAP 2.5(a)(1); *Wenatchee Reclamation Dist. v. Mustell,* 35 Wn. App. 113, 665 P.2d 909 (1983), *aff'd,* 102 Wn.2d 8, 684 P.2d 1275 (1984). Issues affecting fundamental constitutional rights may also be raised for the first time on appeal, RAP 2.5(a)(3); *State v.*

*Dictado,* 102 Wn.2d 277, 287, 687 P.2d 172 (1984), or may be determined by this court as justice may require. RAP 12.2; *State v. Diana,* 24 Wn. App. 908, 604 P.2d 1312 (1979).

The issue Santos raises is properly before us. He questions whether the section of the child support statute eliminating the need for an independent guardian for a child in paternity proceedings[2] improperly and unconstitutionally eliminates the requirement that a child be made a party to paternity proceedings. As construed by the State here, we believe it does.

In this paternity action brought by the Pierce County Prosecuting Attorney on behalf of the mother and the child, Ambrosia Lynn Montes was named, but not served, as a party. She was not represented by independent counsel or a guardian ad litem.

Both the paternity statute, RCW 26.26, and constitutional considerations require that children be parties to actions determining their paternity. The importance of familial bonds accords constitutional protection to the parties involved in judicial determinations of the parent–child relationship. These protections are found when the State seeks to terminate a parent–child relationship. *In re Luscier,* 84 Wn.2d 135, 139, 524 P.2d 906 (1974); *In re Myricks,* 85 Wn.2d 252, 533 P.2d 841 (1975). They are also present when the State seeks to establish one. *Little v. Streater,* 452 U.S. 1, 68 L. Ed. 2d 627, 101 S. Ct. 2202 (1981); *State v. James,* 38 Wn. App. 264, 686 P.2d 1097, *review denied,* 103

---

[2] "The provisions of RCW 26.26.090 requiring appointment of a general guardian or guardian ad litem to represent the child in an action brought to determine the parent and child relationship do not apply to actions brought under chapter 26.26 RCW if:

"(1) The action is brought by the attorney general on behalf of the department of social and health services, the child, or the natural mother; or

"(2) The action is brought by any prosecuting attorney on behalf of the state, the child, or the natural mother when referral has been made to the prosecuting attorney by the department of social and health services requesting such action.

"The court, on its own motion or on motion of a party, may appoint a guardian ad litem when necessary." RCW 74.20.310.

Wn.2d 1004 (1984). The role of a child, in a paternity action, is to seek to maintain or establish a familial bond and protect himself from an erroneous determination of parentage. Comment, *Paternity Determinations in Washington: Balancing the Interests of All Parties,* 8 U. Puget Sound L. Rev. 653, 660 (1985).

We have previously recognized that due process protects a child's interest in a paternity proceeding. Procedural due process already requires that a child must be a party to a paternity action in recognition of the principle that "no individual should be bound by a judgment affecting his or her interests where he has not been made a party to the action." *Hayward v. Hansen,* 97 Wn.2d 614, 617, 647 P.2d 1030 (1982).

A child must not be a party in name only. It is fundamental that parties whose interests are at stake must have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 422, 511 P.2d 1002 (1973), quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965). Because a child cannot represent his or her own interests, RCW 26.26.090 requires that a child be represented by a guardian or a guardian ad litem, *State v. Douty,* 92 Wn.2d 930, 932–33, 603 P.2d 373 (1979), who in fact protects the child's interests. *See Miller v. Sybouts,* 97 Wn.2d 445, 450–51, 645 P.2d 1082 (1982).

RCW 74.20.310 essentially allows the State to step into the role of guardian for the child. When the State brings a paternity action on behalf of the child, the child need not be made a party if in fact the child is one of the parties instigating the suit. There is for this reason no direct conflict between RCW 26.26.090 and RCW 74.20.310. Nevertheless, the same elements of procedural due process apply whether a guardian or the State represents the interests of a child.

Procedural fairness is not all that due process requires of a paternity proceeding. The child's interest in a paternity proceeding extends beyond the immediacy of support which

a potential father might provide.[3] Inheritance rights and familial bonds are also at stake. Substantive due process, we believe, requires accuracy in establishing paternity. In holding that procedural due process entitles indigent defendants to free blood tests in paternity suits, the Supreme Court stated:

> Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. Obviously, both the child and the defendant in a paternity action have a *compelling interest* in the *accuracy* of such a determination.

(Italics ours.) *Little v. Streater,* 452 U.S. at 13.

We have recognized the need both for support and an accurate determination of parentage. RCW 26.26.090 was designed "to protect the child's rights in both support and determinations of parentage by requiring the child to be a party and independently represented." *Hayward v. Hansen, supra* at 617.

Although RCW 74.20.310 eliminates the requirement found in RCW 26.26.090 for an independent guardian to represent a child when the State initiates a paternity action on behalf of the mother or the child, it does not eliminate the need for active representation of all of the child's interests. RCW 74.20.310, enacted several years after the general paternity statute, reflects the State's primary interest in a paternity action—to protect the public from the burden of supporting children born out of wedlock where the fathers are capable of contributing to their support. *See State v. Klinker,* 85 Wn.2d 509, 521, 537 P.2d 268 (1975); *In re R.W.L.,* 116 Wis. 2d 150, 341 N.W.2d 682, 685 (1984). Inasmuch as the primary purpose of the State's proceeding is to

---

[3]In its own brief, the State acknowledges that a parent, the child and the State each have separate and independent interests in establishing paternity. Brief of Respondent, at 15. *See also In re Burley,* 33 Wn. App. 629, 640, 658 P.2d 8 (1983).

determine who will support the child, the State may be tempted to accept a stipulation of paternity even though further reasonable investigation would turn up other possible fathers. The State cannot abuse the authority RCW 74.20.310 grants it to find someone to pay child support, and neglect the very real need of the child for an accurate determination of his or her parentage.

It could be argued that this is what happened in this matter. Santos notified the State of his willingness to stipulate to paternity. Without any investigation as to the veracity of his claim, a judgment was entered declaring Santos the father. A putative father's statement that he is the father of a child is not necessarily credible. On the basis of blood tests, one study has estimated that 18 percent of a group of men who voluntarily admitted to paternity were not in fact the fathers of the children in question. H. Krause, *Illegitimacy: Law and Social Policy* 108 (1971).

Courts and commentators have recognized the importance of independent representation for a child when the state brings a paternity action against the father. *See* Genden, *Separate Legal Representation for Children: Protecting the Rights and Interests of Minors in Judicial Proceedings*, 11 Harv. C.R.–C.L. L. Rev. 565, 576–78 (1976); Note, *The Nature of Paternity Actions*, 19 J. Fam. L. 475, 490–94 (1980–1981); H. Krause, at 113 ("If the child is to have anything, it must have a *right* to have his paternity ascertained in a fair and efficient manner."). In its decision establishing a right to appointed counsel for indigent defendants in paternity actions, the California Supreme Court quoted the preceding excerpt from Professor Krause and added that "[i]t is in the child's interest not only to have it adjudicated that *some* man is his or her father and thus liable for support, but to have some assurance that the correct person has been so identified. When the state initiates paternity proceedings, whether on behalf of the mother . . . or the child . . . the state owes it to the child to ensure

that an accurate determination of parentage will be made."
*Salas v. Cortez,* 24 Cal. 3d 22, 34, 593 P.2d 226, 154 Cal.
Rptr. 529, *cert. denied,* 444 U.S. 900 (1979).

We agree with the reasoning of the California Supreme
Court. The due process accorded the interests of a child
dictates that the procedures of a paternity determination
ensure accuracy. *See State v. Meacham,* 93 Wn.2d 735,
737–38, 612 P.2d 795 (1980) ("the State's interest in accu-
rately determining the parentage of the children is compel-
ling"). Here, the State failed to protect the interests of the
child. A prudent guardian for the child would not blindly
accept an admission of paternity from one of several poten-
tial fathers without further investigation and scientific evi-
dence of paternity.

Since many nonfathers tend to admit paternity on the
basis of mistake or threats, at least a cursory check into
available anthropological and biological evidence of pater-
nity is essential. The State should at least identify whether
other potential fathers exist (1) by asking the natural
mother whether she had sexual relations with any other
men within 1 month before or after the calculated date of
conception; and (2) by comparing the physical characteris-
tics of the father, child, and mother. As demonstrated by
*State v. Meacham, supra,* routine employment of blood
grouping tests to exclude biologically impossible fathers is
also desirable when a question as to paternity is raised by
preliminary inquiry. *See* H. Krause, at 158; Beautyman,
*Paternity Actions—A Matter of Opinion or a Trial of the
Blood?,* 4 J. Legal Med. 17, 25 (April 1976).

RCW 74.20.310 provides authority for the trial court to
appoint a guardian ad litem when necessary. Appointment
is necessary in a situation such as this, where there was no
scientific proof of parentage and more than one potential
father could have been identified with minimum investiga-
tion. For the guidance of other counsel, inasmuch as this

ruling could not have been anticipated by our previous rulings, we will not apply this ruling retroactively. *See Brumley v. Charles R. Denney Juvenile Ctr.*, 77 Wn.2d 702, 707, 466 P.2d 481 (1970).

The judgment is vacated without prejudice to the State to properly bring a paternity action on the child's behalf.

BRACHTENBACH, PEARSON, CALLOW, and GOODLOE, JJ., concur.

DOLLIVER, C.J. (dissenting)—Miguel Santos voluntarily, indeed eagerly, without reservation, fraud or mistake, asserted he was the father of Ambrosia, a child born to Vanessa Louise Montes. He stipulated to the judgment and order in the paternity proceedings. In those proceedings, there was no requirement a guardian for the child be appointed. RCW 26.26.090; RCW 74.20.310. Subsequently, following a quarrel with Vanessa Montes more than 1 year after the birth of Ambrosia, Santos again returned to court to claim constitutional error because an independent guardian was not appointed for Ambrosia in the paternity action. By assertion and without analysis, the majority adopts this view.

With the end of his passion for Montes, Santos now seeks to brand illegitimate the child whose paternity he once embraced. To release himself from what no doubt now appear to be unwanted paternal obligations, financial and otherwise, Santos has discovered the doctrine of "the best interests of the child". To say that under these circumstances it is the "best interests of the child" being served is hypocritical at worst and disingenuous at best. I find it reprehensible to speak of the "best interests of the child" when it is clear from the record the only interests of any concern to Santos are his own. His relationship with Montes having ended, Santos also wishes to shuck off his legal ties to and obligations for Ambrosia.

Miguel Santos urged the court to declare him the father; the court complied. The best interests of the child are best served by maintaining this relationship.

DORE, ANDERSEN, and DURHAM, JJ., concur with DOLLIVER, J.

Reconsideration denied September 23, 1985.