191 P.3d 934 (2008)
In re the PARENTAGE OF Q.A.L., Child,
D.M.G., Petitioner,
v.
K.M.L., Respondent.
No. 36564-2-II.
Court of Appeals of Washington, Division 2.
September 3, 2008.
*935 Emmelyn Hart-Biberfeld, Talmadge Law Group PLLC, Tukwila, WA, Joseph John Michael Lombino, Lombino Martino PS, Tacoma, WA, for Child/Petitioner.
John Theodore Robson, Jr., Attorney at Law, University Place, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 D.M.G.[1] appeals the trial court's order dismissing his parentage petition as untimely under RCW 26.26.540(2). We agree with the trial court that, under RCW 26.26.540(2), D.M.G.'s parentage petition, which was filed less than two months after the results of a deoxyribonucleic acid (DNA) test showed him to be the father, but more than two years after the child's mother acknowledged another man as Q.A.L.'s father, was not filed within the statutory time limits. But because the trial court's order dismissing D.M.G.'s parentage petition was issued in a proceeding in which the child's constitutional right to be a party to an action determining his paternity was denied, we remand for appointment of a guardian ad litem (GAL) to represent Q.A.L.'s best interests and his constitutionally protected interest in an accurate determination of his parentage.

FACTS
¶ 2 On June 26, 2000, T.M.F. gave birth to Q.A.L. From the summer of 1999 to the fall of 2002, T.M.F. lived with and engaged in a sexual relationship with K.M.L. From August to October 1999, T.M.F. also engaged in sexual intercourse with D.M.G. At different times, T.M.F. told both K.M.L. and D.M.G. that they might be the child's father. At the time of Q.A.L.'s birth, T.M.F. and K.M.L. were living together.
¶ 3 On August 4, 2000, T.M.F. and K.M.L. filed a signed affidavit of acknowledgement of paternity with the Center for Health Statistics in Washington. The department accepted and filed the affidavit. The record does not show that any genetic paternity tests (DNA) were ever conducted to confirm K.M.L.'s paternity. On February 28, 2002, the Department of Social and Health Services (DSHS) ordered K.M.L. to pay T.M.F. child support.
¶ 4 On June 13, 2002, the legislature enacted RCW 26.26.540, requiring that a parentage petition for a child with an acknowledged or adjudicated father, such as K.M.L., must be filed no later than two years after the acknowledgement or adjudication. RCW 26.26.540(2). Before this statute was enacted, no time limit for filing a parentage petition existed. See former RCW 26.26.060 (1983).
¶ 5 In the spring of 2005, T.M.F. told D.M.G. that he might be Q.A.L.'s father. According to K.M.L., T.M.F. had "relapsed and was actively abusing drugs in 2005" which prompted him to file a petition for a residential schedule on June 1, 2005. Clerk's Papers at 42. According to both D.M.G. and K.M.L., on December 20, 2005, the trial court awarded K.M.L. primary custody of Q.A.L. and ordered T.M.F. to pay K.M.L. child support.[2] *936 According to the record, as submitted, T.M.F. never challenged K.M.L.'s paternity in court.
¶ 6 In late 2006, T.M.F. died and, in February 2007, Q.A.L.'s maternal grandparents asked D.M.G. to submit to a DNA test to confirm their daughter's earlier doubts about K.M.L.'s paternity. The test was conducted without K.M.L.'s knowledge. On March 15, 2007, the DNA test results showed that there is a 99.9478 percent probability that D.M.G. is Q.A.L.'s biological father.
¶ 7 Less than two months later, on May 2, 2007, D.M.G. filed a petition for establishment of parentage and requested genetic testing and the appointment of a GAL to represent Q.A.L. In response, K.M.L. filed a motion to dismiss D.M.G.'s petition.
¶ 8 At first, believing it did not have the evidence to show the 2000 acknowledgement and the 2002 child support orders, the trial court denied K.M.L.'s motion to dismiss. But following K.M.L.'s motion to reconsider, which contained these documents, the trial court ruled that D.M.G.'s petition was untimely under In re Parentage of M.S., 128 Wash.App. 408, 115 P.3d 405 (2005), and RCW 26.26.540(2) because the statute of limitations began to run when this statute went into effect in June 2002.
¶ 9 The trial court denied K.M.L.'s subsequent request for attorney fees because it found that D.M.G.'s action was brought in good faith.
¶ 10 Arguing that the trial court improperly refused to appoint a GAL to represent Q.A.L. and wrongfully dismissed his parentage action, D.M.G. timely appeals.

ANALYSIS

Statute of Limitations
¶ 11 D.M.G. asserts that the trial court erred in granting K.M.L.'s motion to dismiss. We review a trial court's decision to dismiss a case on statute of limitations grounds de novo. M.S., 128 Wash.App. at 412, 115 P.3d 405 (citing Ellis v. Barto, 82 Wash.App. 454, 457, 918 P.2d 540 (1996), review denied, 130 Wash.2d 1026, 930 P.2d 1229 (1997)). Relying on RCW 26.26.540(2), the trial court granted K.M.L.'s motion to dismiss D.M.G.'s parentage petition as untimely. RCW 26.26.540(2) provides:
If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is neither a signatory to the acknowledgement nor a party to the adjudication and who seeks an adjudication of paternity of the child must commence a proceeding not later than two years after the effective date of the acknowledgement or adjudication.
¶ 12 Here, it is undisputed that K.M.L. became the acknowledged father in August 2000 when he and the child's mother signed and filed an affidavit of acknowledgement of paternity. RCW 26.26.305. It is also undisputed that D.M.G. was not a signatory to the acknowledgement and commenced this action for an adjudication of paternity less than two months after DNA results showed him to be the child's father but more than two years after the effective date of K.M.L. and T.M.F.'s recorded paternity acknowledgement.
¶ 13 By statute, the legislature has set out the individuals who must be joined as parties in a proceeding to adjudicate parentage: (1) the mother of the child, (2) a man whose paternity of the child is to be adjudicated, and (3) an intended parent under a surrogate parentage contract. RCW 26.26.510. But it has acknowledged only briefly that the child retains an interest in his parentage determination by requiring that, if the child resides in this state, a proceeding to adjudicate parentage should be brought where the child resides.[3] RCW 26.26.520. In its 2002 enactment, however, the legislature did not make the child a necessary party to a proceeding to adjudicate parentage. RCW 26.26.555(1).[4]
*937 ¶ 14 But in State v. Santos, 104 Wash.2d 142, 702 P.2d 1179 (1985), our Supreme Court held that "constitutional considerations require that children be parties to actions determining their paternity." 104 Wash.2d at 146, 702 P.2d 1179 (emphasis added). That court went on to explain:
Procedural due process already requires that a child must be a party to a paternity action in recognition of the principle that "no individual should be bound by a judgment affecting his or her interests where he has not been made a party to the action." Hayward v. Hansen, 97 Wash.2d 614, 617, 647 P.2d 1030 (1982).
A child must not be a party in name only. It is fundamental that parties whose interests are at stake must have an opportunity to be heard "at a meaningful time and in a meaningful manner." Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wash.2d 418, 422, 511 P.2d 1002 (1973), quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Because a child cannot represent his or her own interests, RCW 26.26.090 requires that a child be represented by a guardian or a guardian ad litem, State v. Douty, 92 Wash.2d 930, 932-33, 603 P.2d 373 (1979), who in fact protects the child's interests. See Miller v. Sybouts, 97 Wash.2d 445, 450-51, 645 P.2d 1082 (1982).
Santos, 104 Wash.2d at 147, 702 P.2d 1179.
¶ 15 Here, Q.A.L. has standing to maintain a statutory proceeding to adjudicate parentage. RCW 26.26.505. And RCW 26.26.540 does not place a time limit on his right to assert an accurate determination of his paternity. RCW 26.26.540(2) expressly states "an individual, other than the child ... must commence a proceeding not later than two years after the effective date of the acknowledgement or adjudication." (Emphasis added.) Although the legislature does not make the child a statutory necessary party to a parentage determination, it lacks the authority to infringe on the child's constitutional right to participate in accurately determining his paternity that our Supreme Court declared in Santos. Thus, a GAL should have been appointed to represent Q.A.L.'s interests in the proceeding. RCW 26.26.555(2).[5] And a GAL must be appointed before denying a request for genetic testing to accurately determine the child's paternity. See RCW 26.26.535(3) (in a proceeding to deny genetic testing the child must be represented by a GAL). Whether, after reviewing the child's rights and relationships with D.M.G., K.M.L., and others, the GAL will recommend to the trial court that it is in Q.A.L.'s best interest for further DNA tests or for Q.A.L. to bring an action to accurately determine his parentage under RCW 26.26.540(2), awaits further proceedings in the trial court.
¶ 16 Like the legislature, we are aware of the disruption delayed paternity determinations may cause in a child's life and the benefit of bringing finality to such decisions. But we agree with our Supreme Court that "[t]he child's interest in a paternity proceeding extends beyond the immediacy of support which a potential father might provide. Inheritance rights and familial bonds are also at stake. Substantive due process, we believe, requires accuracy in establishing paternity." Santos, 104 Wash.2d at 147-48, 702 P.2d 1179. The record here suggests that it is likely that Q.A.L. may not only have important rights to additional familial bonds at stake but also rights and benefits as a member of a recognized Native American tribe.[6]
¶ 17 Accordingly, we remand to the trial court for appointment of a GAL to represent *938 Q.A.L.'s interests in determining whether genetic testing should be conducted, RCW 26.26.535(3), and whether Q.A.L. should initiate a proceeding to adjudicate his parentage. RCW 26.26.540.

Attorney Fees
¶ 18 D.M.G. renews his request for attorney fees on appeal. RAP 18.1(b). He also asserts that K.M.L. conceded the attorney fees issue because he failed to respond to it in his response brief. RAP 10.3(c).
¶ 19 Under the Uniform Parentage Act, ch. 26.26 RCW, the trial court has discretion to award attorney fees. RCW 26.26.140; In re Marriage of T., 68 Wash.App. 329, 334, 842 P.2d 1010 (1993). The trial court denied K.M.L.'s request for attorney fees because it found that D.M.G.'s action was brought in good faith. While D.M.G. was not the prevailing party below, to the extent that Q.A.L.'s paternity may be further determined, he has prevailed here. Accordingly, we grant D.M.G.'s request for attorney fees on appeal.
We concur: VAN DEREN, C.J., and PENOYAR, J.
NOTES
[1] Because of the nature of this case, some confidentiality is appropriate. Accordingly, we have determined, under RAP 3.4, not to use the names of the parties involved in the case caption or the body of this opinion.
[2] The actual trial court order is not included in the appellate record for our review.
[3] It may also be brought where the probate of the presumed or alleged father's estate has been commenced. RCW 26.26.520(3).
[4] RCW 26.26.555(1) provides: "A minor child is a permissible party, but is not a necessary party to a proceeding under RCW 26.26.500 through 26.26.630."
[5] RCW 26.26.555(2) provides:

If the child is a party, or if the court finds that the interests of a minor child or incapacitated child are not adequately represented, the court shall appoint a guardian ad litem to represent the child, subject to RCW 74.20.310 neither the child's mother or father may represent the child as guardian or otherwise.
[6] The Bureau of Indian Affairs (BIA) Guidelines indicate that if a state court has reason to believe a child involved in a child custody proceeding is Indian, the court shall seek verification of the child's status from the BIA or the child's tribe. See Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, B.1.(a) (1979); In re Matter of Nikki R., 106 Cal.App.4th 844, 131 Cal.Rptr.2d 256 (2003) (requiring juvenile court to oversee adequacy of verification efforts). At the reconsideration hearing, D.M.G.'s attorney argued to the trial court that "assuming the DNA tests that were taken by [D.M.G. hold] up and he's adjudicated and found to be the father, well, this child would be entitled to all kinds of benefits that he might not otherwise be entitled to because of his Indian heritage." Report of Proceedings (June 29, 2007) at 11. And in his supplemental brief to this court, D.M.G.'s counsel maintains "an additional and equally important interest for the Court to consider when determining Q.A.L.'s best interests is the benefits he may receive as a Native American." Suppl. Br. of Appellant at 9 n. 7.